IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID CARTER et al                 *
                                   *
          v.                       *          Civil Action WMN-07-CV-3117
                                   *
MAYOR & CITY COUNCIL OF            *
BALTIMORE CITY et al                         *

     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM**

     Before the Court is Defendants Mayor and City Council of

Baltimore City and the Baltimore City Fire Department's Second

Motion for Summary Judgment.  Paper No. 46.  This second motion

follows this Court's granting summary judgment on Defendants'

first motion on all of Plaintiffs' claims except Plaintiffs'

federal Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.

(FLSA) claim.  The Court denied summary judgment on the FLSA

claim pending discovery and the development of a more complete

record.  The Parties had an opportunity for discovery and the

second motion for summary judgment is now fully briefed.  Upon

review of the pleadings and the applicable case law, the Court

determines that no hearing is necessary (Local Rule 105.6) and

the motion will be granted as set forth below.

**I.    BACKGROUND**

     As discussed in this Court's previous memorandum,

Plaintiffs are current or former apprentices in a Baltimore City

Fire Department (BCFD) three-year Firefighter/Paramedic

Apprenticeship Program.  Plaintiffs allege that as part of their apprenticeship they were required to attend class and perform on-the-job practical training on an ambulance and in the hospital without compensation in violation of the FLSA.

It is undisputed that one of the duties of a Firefighter/Paramedic is to provide emergency medical care, including Advanced Life Support.  In order to provide Advanced Life Support, Maryland state law requires licensure as a Cardiac Rescue Technician (CRT).  Md. Code Regs. 30.01.01.20.  State law designates the State Emergency Medical Services Board (EMS Board) to approve CRT courses, conduct examinations, and issue CRT licenses.  Md. Code Ann., Educ. § 13-516(a)(2).  Among the requirements set out by the EMS Board to obtain a CRT license are

- successful completion of a "Cardiac/Rescue Technician/EMT Intermediate/99 (CRT-I) course;

- 12 months experience in providing patient care as an EMT-B or at least 150 documented ambulance responses (renewal of the EMT-B certification requires completion of a refresher course);

- active registration as an EMT-I/99 with the National Registry of Emergency Medical Technicians (which requires practical testing and passage of an exam) or licensure

before July 31, 2008 as a CRT based on successful
completion of a CRT update program.

- Completion of a Maryland protocol review session (which
  requires taking a review course and exam and other
  testing).

- Affiliation with an ALS EMS Operation program.

- A score of at least 75 percent on the CRT written
  licensure examination approved and administered by the
  Maryland Institute for Emergency Medical Services Systems
  (MIEMSS).

The Fire Department required remedial training for
apprentices when they failed the required national registry EMT
test or any of the exams during the CRT-I course.  In addition,
if students failed the National Registry exam three times, the
National Registry required the students to take a 48 hour review
before it would allow them to re-take the exam.

The Maryland Institute for Emergency Medical Services
Systems issued regulations governing the content of ALS
education programs.  Md. Code Regs. 30.04.02.01 et seq.  In
addition to classroom training, ALS students must also complete
a supervised clinical experience, which includes the practice of
skills within clinical education facilities, and a supervised
field internship, which includes the practice of skills while
functioning in a prehospital ALS environment.  Id. 30.04.02.05.

During the clinical and field training, the MIEMSS regulations require that the student is supervised by clinical and field preceptors.  Id. 30.04.02.06.  In the field portion of the training, the ratio of students to preceptors must be one to one.  Id. 30.04.02.06(F)(2).

Upon entering the fire academy, the apprentices signed an Apprenticeship Agreement in which they agreed to the terms of the Apprenticeship Standards filed with the Maryland Apprenticeship and Training Council.  The Standards include a requirement that apprentices will complete a minimum of 144 hours per year of related instruction and that these hours will not be considered as hours worked when given outside regular working hours.  In addition to the CRT-I course, apprentices were required to undergo enhanced training, including courses in pump operations, aerial operations, hazmat tech, arson awareness/sprinkler, and rescue technician.

During the second portion of the apprentices' training, they worked an eight day cycle, with 4 days on and 4 days off. Training to obtain their CRT licensure was sometimes scheduled on the apprentices' days off.  Apprentices were not compensated during the off-duty training times.  Plaintiffs contend that they should have been compensated for this off-duty training time under the FLSA.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.  The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact exists for trial.  Celotex, 477 U.S. at 324.  Unsupported speculation is insufficient to defeat a motion for summary judgment.  Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)).

Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material."  Id.

Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

**III. DISCUSSION**

As discussed in this Court's previous memorandum resolving Defendant's first motion for summary judgment, the FLSA requires that covered employers pay their employees not less than one and one-half times the regular pay rate for all overtime hours worked.  29 U.S.C. § 207(a)(1).  Plaintiffs allege that the City violated this provision by refusing to pay them overtime for the hours spent in training outside their regular workweek.

Cases analyzing whether training mandated by employers or potential employers should be compensable as hours worked include cases in which the potential employer requires the completion of training before an individual may be hired and cases in which the individual is an apprentice or already an employee and required to complete training as part of the

6

apprenticeship or as an agreed upon condition to hiring.  The seminal cases relating to training and the FLSA are the companion cases, <u>Walling v. Portland Terminal Co.</u>, 330 U.S. 148 (1947) and <u>Walling v. Nashville, Chattanooga and St. Louis Ry.</u>, 330 U.S. 158 (1947).  In <u>Portland Terminal</u>, the defendant railroad had required the completion of a course of practical training before individuals could be hired as prospective yard brakemen.  330 U.S. at 149.  The course involved a progressive increase in the trainees' ability to act as a brakeman beginning with observing routine activities through gradually conducting the actual work of a brakeman under close scrutiny.  <u>Id.</u>  The Supreme Court noted that the activities of the trainee did not displace any of the regular employees, who were required to supervise any actual work done by the trainees, and did not expedite the company business, but may at times have impeded it. <u>Id.</u> at 149-50.  Once certified as competent, the individuals who completed the training comprised a pool of qualified workmen available to the railroad when needed.  <u>Id.</u> at 150.  The Supreme Court focused on whether the trainees were to be considered employees and thus protected by the FLSA.  <u>Id.</u>  The FLSA defines employ as "to suffer or permit to work."  <u>Id.</u> at 152; 29 U.S.C. § 203(g).  Despite the broad definition, the Supreme Court held that it could not "be interpreted so as to make a person whose work serves only his own interest an employee of another person

who gives him aid and instruction." _Portland Terminal_, 330 U.S. at 152.  The Court compared the training at issue to courses in railroading in a public or private vocational school, in which "it could not be reasonably suggested that [the students] were employees of the railroad merely because the school's graduates would constitute a labor pool for the railroad." _Id._ at 152-53. Thus, the Court held that when the railroads received no "immediate advantage" from the work done by the trainees, the trainees were not employees under the FLSA.  _Id._ at 153.

In analyzing _Portland Terminal_, the Fourth Circuit has concluded that the general test used to determine if an employee is entitled to the protections of the Act is "whether the employee or the employer is the primary beneficiary of the trainees' labor."  _McLaughlin v. Ensley_, 877 F.2d 1207, 1209 (4th Cir. 1989).  In _McLaughlin_, the defendant owned a snack foods distribution business in which he required new hires to spend five days travelling an ordinary route with an experienced routeman as training before they were hired.  877 F.2d at 1208. The trainees loaded and unloaded the delivery truck, restocked stores with the defendants products, were given instruction on how to drive the trucks, were introduced to retailers, were taught basic snack food vending maintenance, and occasionally helped in preparing orders of goods with financial exchanges. _Id._  The court found that, unlike in _Portland Terminal_, the

prospective employees were simply helping to service a route, and the instruction they received did not rise to the level that one would receive in a general, vocational course in outside salesmanship.  Id. at 1210.  Instead, the court found that the trainees were taught only simple, specific job functions related to the defendant's business.  Id.  For those reasons, the court concluded that the trainees were entitled to be considered covered employees under the FLSA.  Id.  Compare Reich v. Parker Fire Protection District, 992 F.2d 1023 (10th Cir. 1993) (holding that firefighter trainees were not employees because they obtained training comparable to a vocational school and the defendant was not immediately benefited by the trainees' activities as their training activities were supervised and they did not assume the duties of career firefighters; the benefit to the defendant from the plaintiffs' supervised training activities was de minimis).

Where trainees are already employees, the Courts look also to the Portal-to-Portal Act, which provides that an employer need not pay an employee for activities that are "preliminary or postliminary" to the principal activity or activities the employee is employed to perform.  29 U.S.C. § 254(a)(2).  The Supreme Court has interpreted the mandate of the Portal-to-Portal Act to mean "that activities performed either before or after the regular work shift, on or off the production line, are

compensable . . . if those activities are an integral and
indispensable part of the principal activities for which covered
workmen are employed." <u>Steiner v. Mitchell</u>, 350 U.S. 247, 256
(1956).

The most oft-cited case applying the "preliminary or
postliminary" test to training activities is <u>Ballou v. General
Electric Co.</u> 433 F.2d 109 (1st Cir. 1970).  In <u>Ballou</u>, the
First Circuit held that the classroom training required of the
defendant's apprentices taking place outside of working hours
was neither integral nor indispensable to the apprentices'
principal activity, which was the work that took place during
their regular 40 hour work-training week.  <u>Id.</u> at 112.  The
court looked to <u>Portland Terminal</u> and found that if the
defendant had not employed the appellants as workers, but
provided only training programs that they were required to
complete successfully before they could be employed as
journeymen, the apprentices would be entitled to no
compensation.  <u>Id.</u>  Thus, the court concluded that "the
employer's decision to hire its employees <u>before</u> the completion
of training did not obligate it to compensate them for the time
spent in their status as students after their hiring."
<u>Bienkowski v. Northeastern Univ.</u>, 285 F.3d 138, 141 (1st Cir.
2002) (citing <u>Ballou</u>, 433 F.2d at 112).  <u>Accord</u> <u>Chao v.
Tradesman Int'l, Inc.</u>, 310 F.3d 904, 910 (6th Cir. 2002)

("Therefore, we agree with the First Circuit that the defendant employer should not be made liable for overtime pay for time its employees spend as students, rather than as workers. . . .  We do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job requirements.").

In Bienkowski, the First Circuit applied its analysis in Ballou to facts similar to the facts found here.  285 F.3d at 141.  In Bienkowski, the defendant hired the plaintiffs as probationary police officers with a requirement that they receive and retain certification as Massachusetts-registered EMTs within one year of their appointment.  Id. at 139.  At the time of hire, the plaintiffs signed a letter acknowledging the requirement.  Id.  The training, as required pursuant to Massachusetts statutes, regulations, and Department of Public Health standards, required approximately 110 hours of classroom work, as well as 10 hours of in-hospital evaluation time, practical exams, and written exams.  Id.  Although the plaintiffs could have taken the EMT courses at various locations throughout Massachusetts, they chose to take the course at Northeastern, where they were entitled to tuition reimbursement. Id.  For the most part, the course requirements took place

outside of the plaintiffs' working hours. <u>Id.</u> at 140.  Prior to receiving their certification, the plaintiffs were prohibited from performing EMT work, but following their certification, they regularly used their skills on the job.  <u>Id.</u>  The Court held that it would not hold the defendant "liable for overtime pay for time its employees spend as students, rather than as workers, simply because [the defendant] decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent basis."  <u>Id.</u> at 141.

Defendants have articulated and Plaintiffs have not disagreed that the classes and on-the-job training required of the apprentices can be broken down into four categories: 1) initial classroom training to obtain CRT licensure; 2) classroom enhanced training; 3) clinical training with an ambulance medic team and in the hospital to obtain CRT licensure; and 4) mandatory repeat classroom training to obtain CRT licensure when a student has failed any of the required exams.  Under either the "primary beneficiary" test of <u>McLaughlin</u> or the "integral and indispensable part of the principal activities" test of <u>Steiner</u>, the hours spent in all four categories of training are not compensable as hours worked under the FLSA.

All of the classroom and practical training required to obtain the CRT license, the classroom enhanced training, and the

repeat classroom training are no different than that found in
Portland Terminal, Ballou, and Bienkowski.   Plaintiffs are
apprentices in an apprenticeship program approved by the
Department of Labor and as part of that program were required to
take the CRT Training, which required both classroom and
clinical training.  As the CRT license was required in order for
Plaintiffs to conduct their duties as firefighters/paramedics,
the City could have required the Plaintiffs to obtain the
license before hiring them.  In fact, similar training is
provided at Baltimore City Community College and Community
College of Baltimore County.  Instead the city allowed
Plaintiffs to obtain the license while they were concurrently
employed by the city, and funded the training.  Although the
City ultimately benefitted from Plaintiffs obtaining the CRT
license in that it then had a pool of employees certified to
conduct ALS, Plaintiffs obtained a license fully transferrable
to their employment with any other employer that required the
ability to provide Advanced Life Support.  Thus, as in Portland
Terminal and unlike in McLaughlin, Plaintiffs were the primary
beneficiaries of the training.  Moreover, as Plaintiffs were not
able to perform any of the ALS duties until they obtained their
license, as in Bienkowski the training was not an integral and
indispensable part of their paid work duties during the period
of their training.

This Court's holding is supported by Department of labor regulations interpreting the FLSA that exclude from the computation of "hours worked" the time spent in certain kinds of training.

One such regulation is found at 29 C.F.R. § 553.226(b).

(b) While time spent in attending training required by an employer is normally considered compensable hours of work, following are situations where time spent by employees of State and local governments in required training is considered to be noncompensable:

(1) Attendance outside of regular working hours at specialized or follow-up training, which is required by law for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction and subordinate jurisdictions.

(2) Attendance outside of regular working hours at specialized or follow-up training, which is required for certification of employees of a governmental jurisdiction by law of a higher level of government (e.g., where a State or county law imposes a training obligation on city employees), does not constitute compensable hours of work.

(3) Time spent in the training described in paragraphs (b)(1) or (2) of this section is not compensable, even if all or part of the costs of the training is borne by the employer.

A 1999 Department of Labor Opinion letter applies this regulation to facts identical to those found here.

Q.1. As a condition of employment, firefighters for County A must have current EMT (emergency medical training) certification.  Although this certification is granted through the state, the state does not

require the fire fighters have the certification.
However, since City A requires it, the training is not
"voluntary."  Under these circumstances, must the EMT
training that is required to maintain this
certification be counted as hours worked if the
training takes place during non-working hours?

A.1.  No.  While time spent in attending training
required by an employer is normally considered
compensable hours of work, attendance outside of
regular working hours at specialized or follow-up
training which is required by law for certification of
employees of a governmental jurisdiction, does not
constitute hours of work under the FLSA.  See Section
553.226 of Regulations, 29 CFR Part 553.

Sept. 30, 1999, Dept. of Labor Op. Letter, 1999 WL 1788163.

In addition, the Department of Labor has issued a

regulation as to apprenticeship training.

[T]ime spent in an organized program of related,
supplemental instruction by employees working under
bona fide apprenticeship programs may be excluded from
working time if.... (b) such time does not involve
productive work or the performance of the apprentice's
regular duties.  If the above criteria are met the
time spent in such related instruction shall not be
counted as hours worked unless the written agreement
specifically provides that it is hours worked.  The
mere payment or agreement to pay for time spent in
related instruction does not constitute an agreement
that it is hours worked.

29 C.F.R. § 785.32.

Plaintiffs do not contest that the initial CRT training and

the enhanced training are not compensable under these

regulations.  They argue, however, that although the clinical

training is a required component of the CRT-I course, it was

compensable time because it was productive work and constituted

15

performance of their regular duties.  The undisputed evidence shows that a regular medic unit is staffed by two individuals, which could be two ALS providers or an ALS provider and a BLS provider.  When Plaintiffs were assigned to a medic unit as part of their training, there was always an ALS provider and another BLS provider; the trainee would then be a third person on the team.  Plaintiffs state in their opposition that "[i]n the experience of many Plaintiffs, under the guise of 'training,' only one person, the [ALS] preceptor – was paid.  Therefore, a paid position on the medic unit was eliminated during the training, as the Defendants filled it with two unpaid apprentices."  Opp. at 8.

Contrary to Plaintiffs' statements in their opposition, however, neither of the provided affidavits establishes that unpaid trainees replaced a paid BLS provider.  Moreover, they have not established that any benefit the City may have received from the trainee's presence is anything more than de minimis or that it outweighed the benefit to the trainee in completing a required component of the CRT training.  One affiant testified that the other BLS provider was paid and drove the ambulance while he, as the trainee, sat in the back of the ambulance. Stoakley Aff. ¶ 4.  Notably, the second affiant said nothing regarding whether the other BLS provider was paid and said nothing about whether he ever drove the ambulance while he was

on a training run.  Bonovich Aff. ¶ 4.  Thus, Plaintiffs have
provided no reason to believe that when they were conducting
training runs they were not able to work with the ALS provider
in a training capacity for the entire period.

Similarly, the time spent by the trainees in the hospital
was also a required component of the CRT training.  Plaintiffs'
affidavits confirm that all of the Plaintiffs' activities in the
hospital were supervised.  They have not shown, however, that
their activities were part of their regular duties or any more
productive than the supervised work done by trainees in Portland
Terminal.  Thus, the clinical training does not constitute
compensable hours worked under the FLSA and the Portal-to-Portal
Act.

Plaintiffs also argue that the duplicative classroom
training, required when Plaintiffs did not pass certain
examinations required for the EMT-I certification, is
compensable as hours worked because it was neither a part of the
approved apprenticeship program nor a legal requirement.  While
the apprentice standards may have simply required the CRT-I
course, it is logical to conclude that the apprentices were
expected to successfully complete the course and obtain their
CRT license.  If an apprentice fails the course and must repeat
it in order to satisfy the requirements to obtain the CRT
license, it is hard to imagine how this is any different than

17

the initial requirement to attend the course.  Moreover, it
seems perverse logic to say that the initial training is not
compensable, but if an apprentice fails the training, it then
becomes compensable.  Finally, the Court sees no immediate
benefit to the Defendants from Plaintiffs taking remedial
courses since it delayed the time that Plaintiffs could conduct
ALS duties.  Thus, the Court sees no difference in the initial
requirement to attend the CRT course and the requirement to take
duplicative training when the student fails the required exams.

## IV.  Conclusion

For the foregoing reasons, the Defendants' motion for
summary judgment will be granted.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: March 2, 2010